UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK J. LAWRENCE, JR.,

          Plaintiff,               Case No. 20-11637

vs.                          HON. MARK A. GOLDSMITH

UNITED STATES SMALL BUSINESS
ADMINISTRATION,

          Defendant.

_____/

## OPINION & ORDER
## (1) DENYING PLAINTIFF'S MOTION FOR SANCTIONS (Dkt. 13) AND (2)
## GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES (Dkt. 18)

This matter is before the Court on Plaintiff Frank Lawrence's motion for sanctions (Dkt. 13) and motion for attorney fees (Dkt. 18). Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court denies Lawrence's motion for sanctions and grants his motion for attorney fees.

## I.      BACKGROUND

These motions stem from a complaint that Lawrence filed concerning a Freedom of Information Act (FOIA) request he submitted to Defendant Small Business Administration (SBA) on April 26, 2020. Am. Compl. ¶ 20 (Dkt. 6). Lawrence sought information about loans that three specific entities and three individuals applied for or received through the Paycheck Protection Program (PPP), "including the amount of the loans, their purpose in general terms and the maturity." Id. SBA administers the PPP, which aimed to assist small businesses negatively affected by the COVID-19 pandemic by providing them funds to cover payroll costs. Id. ¶ 12;

Resp. to Am. Mot. for Attorney Fees at 1–2 (Dkt. 22).  Lawrence filed his FOIA request because he suspected fraud relating to his employer's request for PPP funding.  Am. Compl. ¶ 15.

On May 22, 2020, SBA responded to Plaintiff's FOIA request by invoking a 10-workday extension under 13 C.F.R. §102.5.  Am. Mot. for Attorney Fees at 4; Resp. to Am. Mot. for Attorney Fees at 5.  SBA then sent Lawrence a letter dated June 8, 2020 that stated the following in regard to his FOIA request:

> The Small Business Administration ("Agency") is providing statistical information on the Paycheck Protection Program ("PPP") loans and Economic Injury Disaster Loans ("EIDL") in an effort to keep the public informed of the assistance and actions both it and the thousands of lenders across the country are taking at this difficult time.
>
> The statistical information can be found at: https://www.sba.gov/about-sba/open-government/foia#section-header-32.  Please select "COVID-19 Information" located under Frequently requested records to obtain the data that is currently available.

SBA Response Letter (Dkt. 6-2).  The letter also stated that if Lawrence were dissatisfied with the agency's decision, he could file with the Office of Hearings and Appeals an administrative appeal within 90 days of the date of the letter.  Id.

Lawrence then brought this action under FOIA, seeking declaratory relief and an injunction requiring SBA to disclose the requested records, Am. Compl. ¶ 38.  Lawrence stated that, under the statute, SBA was required to make and communicate to him a determination on his FOIA request, but that at the time he filed his complaint, SBA still had not made or communicated a determination within the meaning of the statute.  Id.  ¶ 33, 34.  According to Lawrence, SBA had thereby constructively denied his FOIA request, and he consequently was not required to exhaust his administrative remedies by filing an administrative appeal.  Id.  ¶ 36.

SBA subsequently filed a motion to dismiss, asserting that Lawrence was required to administratively appeal the agency's response before he could seek judicial review (Dkt. 9).

Because SBA ultimately released to Lawrence all the records that he sought in this action, the Court dismissed the complaint as moot and denied SBA's motion to dismiss as moot. 3/19/21 Order (Dkt. 26).

Two matters remain. Lawrence filed a motion seeking sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, including attorney fees and reasonable expenses incurred in addressing SBA's motion to dismiss—which Lawrence contends was frivolous and vexatiously multiplied the proceedings. Mot. for Sanctions at 5. He also filed a motion for attorney fees, contending that he "substantially prevailed" in this litigation. Am. Mot. for Attorney Fees at 6–10. The Court first evaluates Lawrence's motion for sanctions and then turns to his motion for attorney fees.

## II.      ANALYSIS

### A. Sanctions

Lawrence seeks sanctions under Rule 11 and § 1927. The standards for each of these bases of recovery follow.

#### 1.  Rule 11 Sanctions

Rule 11 states that an attorney who presents written motions to a court is deemed to have made certain representations to the best of the attorney's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). These representations include that a motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that legal contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1)–(2).

In assessing whether sanctions should be awarded for violations of Rule 11, courts measure an attorney's conduct by an objective standard of reasonableness under the circumstances. INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 401 (6th Cir. 1987). A showing of good faith is insufficient to avoid sanctions. Id. Rule 11 obligations are ongoing, as parties are required to "review and reevaluate" their pleadings and modify them where appropriate to conform to the rule. Merritt v. Int'l Ass'n of Machinists & Aerospace Workers, 613 F.3d 609, 626 (6th Cir. 2010) (punctuation modified).

### 2. § 1927 Sanctions

Under § 1927, attorney fees may be awarded where an attorney "so multiplies the proceedings in any case unreasonably and vexatiously." Sanctions may be appropriate when an attorney knows or reasonably should know that the claim pursued is frivolous, or that the attorney's litigation tactics will "needlessly obstruct the litigation of nonfrivolous claims." Jones v. Cont'l Corp., 789 F. 2d 1225, 1230 (6th Cir. 1986). The Court need not find bad faith on the part of the sanctioned party. Dixon v. Clem, 492 F.3d 665, 679 (6th Cir. 2007); see also In re Ruben, 825 F.2d 977, 983–984 (6th Cir. 1987) (noting that "a relaxed standard" is applicable to § 1927 sanctions, as a court may assess fees against an attorney "despite the absence of any conscious impropriety") (punctuation modified). Instead, sanctions under § 1927 "require a showing of something less than subjective bad faith, but something more than negligence or incompetence." Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006).

### 3. Application to Lawrence's Motion for Sanctions

Lawrence argues that sanctions and excess costs are warranted because SBA's motion to dismiss advanced a frivolous legal contention and vexatiously multiplied the proceedings. Mot. for Sanctions at 5; 8/28/20 Service Copy of Motion for Sanctions ¶¶ 13–14 (Dkt. 13-3). SBA

responds with several arguments.  First, it contends that Lawrence's motion should be denied because it does not comply with the requirements of Local Rule 7.1, as Lawrence did not seek concurrence, and the motion does not state that he sought concurrence.  Resp. to Mot. for Sanctions at 2 n.1 (Dkt. 14).[1]  Second, it states that sanctions are unwarranted because the motion to dismiss is meritorious.  Id. at 2–4.  Third, it asserts that even if sanctions could be granted, Lawrence's request for attorney fees and reasonable expenses incurred in defending against the motion to dismiss is inappropriate.  Id. at 4–5.  According to SBA, while Lawrence may have complied with Rule 11's safe-harbor provision, he responded to the motion to dismiss four days after it was filed.  Id.  Therefore, SBA maintains, it did not have an opportunity to minimize the costs that Lawrence incurred in responding to the motion that he now argues was frivolous.  Id. at 5.

The Court considers the issue of Local Rule 7.1 compliance first and then discusses whether sanctions and attorney fees or reasonable expenses are warranted.  As explained below, the Court determines that Lawrence's motion should not be dismissed based on non-compliance with the Local Rule, but it finds that sanctions are not warranted under Rule 11 or § 1927.

### a.  Compliance with Local Rule 7.1(a)

Eastern District of Michigan Local Rule 7.1(a) requires a movant to seek concurrence from the opposing party prior to filing a motion.  E.D. Mich. LR 7.1(a).  If concurrence is obtained, the parties then may present a stipulated order to the Court.  If concurrence is not obtained, the moving party must state in the motion that "there was a conference between the attorneys . . . in which the movant explained the nature of the motion and its legal basis and requested but did not obtain

---

[1] SBA also argues that because a successful litigation strategy is not frivolous or unreasonable, the Court must deny the motion for sanctions if it grants the motion to dismiss.  Resp. to Mot. for Sanctions at 2 (citing J.P. Morgan Chase Bank, N.A. v. Winget, 602 F. App'x 246, 266 (6th Cir. 2015)).  Because the Court denied the motion to dismiss as moot, it need not address this argument.

concurrence in the relief sought [ ] or . . . despite reasonable efforts specified in the motion, the movant was unable to conduct a conference."  Id. 7.1(a)(2).

Lawrence did not state in his motion for sanctions whether he sought concurrence from SBA before filing the motion.  In his reply, Lawrence argues that through the safe-harbor provision of Rule 11—which affords a party on whom a motion for sanctions is served 21 days to withdraw or correct the offending pleading—the rule gives litigants more notice and more opportunity to cure than Local Rule 7.1 does.  Reply at 1 (Dkt. 15).  He states that SBA accordingly had notice and an opportunity to act 21 days before he filed the motion.  Id.

The Court agrees.  The Rule 11 procedure provided the functional equivalent of what would have been achieved under Local Rule 7.1.  Even if Lawrence was guilty of a technical violation, it would not serve the interests of justice to deny it on that basis, as SBA was on full notice of the forthcoming motion.  Cf. Thornton v. U.S. Dep't of Labor, No. 00-CV-72206-DT, 2000 WL 1923502, at *1 (E.D. Mich. Nov. 17, 2000) (determining that, because the non-moving party was aware that the moving party was planning to file a motion to dismiss and indicated its opposition, "the interests of justice would not be served" by dismissing the motion based on the "procedural deficiency" of non-compliance with Local Rule 7.1).

### b.  Sanctions Pursuant to Rule 11 and § 1927

In its motion to dismiss, SBA argued that Lawrence was required to exhaust his administrative remedies before bringing this action and that he failed to do so because he did not file an administrative appeal of its June 8, 2020 decision.  The Court finds that this legal contention is not unsupported by existing law or objectively unreasonable as to warrant Rule 11 sanctions. The Court also finds that it was not frivolous and did not vexatiously multiply the proceedings as to warrant sanctions under § 1927.

1. **Rule 11**

FOIA provides that a federal agency "shall determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of [a proper] request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i)(I). In the case of an adverse determination, an agency must also inform the requester within 20 days of "the right of such person to appeal to the head of the agency." Id. § 552(a)(6)(A)(i)(III). In "unusual circumstances," an agency may extend this time limit to up to 30 working days by providing written notice to the requester. Id. § 552(a)(6)(B)(i).

An individual submitting a request through FOIA generally must exhaust administrative appeal remedies before seeking judicial redress. Hidalgo v. FBI, 344 F.3d 1256, 1258–1259 (D.C. Cir. 2003); see also Auto Alliance Int'l, Inc. v. U.S. Customs Serv., 155 F. App'x 226, 228 (6th Cir. 2005) (holding that "[e]xhaustion of administrative remedies is a threshold requirement to a FOIA claim."). The purpose of this requirement is to give the agency "an opportunity to exercise its discretion and expertise on the matter and make a factual record supporting its decision." Oglesby v. United States Dep't of the Army, 920 F.2d 57, 61 (D.C. Cir. 1990).

Two types of exhaustion exist under FOIA: actual and constructive. Taylor v. Appleton, 30 F.3d 1365, 1368 (11th Cir.1994). "A party is deemed to have actually exhausted all administrative remedies when he or she files a proper request with the appropriate agency and appeals any adverse determinations administratively." Fields v. IRS, No. 12-14753, 2013 WL 3353921, at *4 (E.D. Mich. July 3, 2013). Constructive exhaustion occurs when the agency fails to comply with the applicable statutory time period. 5 U.S.C. § 552(a)(6)(C). Specifically, if the agency does not make and communicate its determination within 20 working days (or 30 days if

"unusual circumstances" exist), the requester is deemed to have exhausted administrative remedies and, therefore, may seek judicial review without first going through the administrative-appeal process. 5 U.S.C. § 552(a)(6)(C)(i). However, notwithstanding this provision, an agency can cure an untimely response. If the agency responds after the 20-day time limit but before the requester files a complaint in federal court, the requester still must exhaust administrative appeal remedies. See Oglesby, 920 F.2d at 63–64.

Lawrence's central argument in his motion is that SBA's response letter dated June 8, 2020 did not "constitute a 'determination' in conformance with the FOIA" and that "[a]ny argument to the contrary is frivolous." Mot. for Sanctions at 6. Lawrence maintains that only a "determination" within the meaning of FOIA triggers the obligation to file an administrative appeal and that, given that he did not receive a determination, he had no such obligation. 8/28/20 Service Copy of Motion for Sanctions ¶ 10. Instead, Lawrence maintains that he constructively exhausted his administrative remedies because SBA did not make or communicate a determination within the timeframe set out in the statute. Id. ¶ 8 (quoting Hertz Schram PC v. FBI, No. 12-14234, 2015 WL 13743459, at *5 (E.D. Mich. Aug. 19, 2015) (R. & R.)). Accordingly, he argues, a motion to dismiss premised on his failure to appeal to the agency and thereby exhaust administrative remedies lacks support in existing law. Id.

In contending that the June 8, 2020 letter did not represent a determination, Lawrence relies primarily on Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n, 711 F.3d 180 (D.C. Cir. 2013) (CREW). See Mot. for Sanctions at 6; 8/28/20 Service Copy of Motion for Sanctions ¶¶ 4, 7, 8, 10; Am. Compl. ¶ 35. There, the United States Court of Appeals for the District of Columbia Circuit addressed the issue of what kind of agency response qualifies as a "determination" for the purposes of constructive exhaustion. CREW, 711 F.3d at 185. The court

8

concluded that to constitute a determination within the meaning of the statute, "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." Id. at 188.  The court also emphasized that the "statutory requirement that the agency provide 'the reasons' for its 'determination' strongly suggests that the reasons are particularized to the 'determination'—most obviously, the specific exemptions that may apply to certain withheld records."  Id. at 186.  It held that if an agency has not issued such a determination within 20 days of the receipt of a proper FOIA request (or 30 days if "unusual circumstances" exist), "the requester may bring suit directly in federal district court without exhausting administrative appeal remedies." Id. at 182.

Applying these standards to the June 8, 2020 letter he received, Lawrence argues that SBA did not inform him whether his request was granted or denied (along with the reasons for denial), did not communicate the scope of the documents that SBA intended to produce and withhold, and simply contained the same boilerplate language featured in other FOIA requests regarding PPP loans.  Mot. for Sanctions at 6; 8/28/20 Service Copy of Motion for Sanctions ¶ 5.  He also alleges that SBA misrepresented that it "provided a website directing [him] to documents in response to the FOIA request" because the website contained in the letter did not respond to the specific information that he sought.  Mot. for Sanctions at 7 (quoting SBA Reply at 2 (Dkt. 11)).

The Court determines that SBA's contention that Lawrence must first appeal to the agency before seeking judicial review is not frivolous such that it violated Rule 11.  It appears that the D.C. Circuit in CREW is the only court to analyze or describe the dimensions of what type of

agency response qualifies as a "determination" under FOIA.[2] See CREW, 711 F.3d at 186 n.4 (noting that despite the "significant amount of FOIA litigation in this Court, we have not had occasion to previously decide this important procedural question, in part because individual FOIA requesters apparently have not thought it worth the candle to press this point, rather than to work with the agency in an effort to obtain the requested documents"). Neither the United States Court of Appeals for the Sixth Circuit nor any district court in this Circuit has addressed the issue of when a "determination" is sufficient to prompt an obligation to exhaust. Even if, before SBA filed its motion to dismiss, Lawrence's complaint provided the agency with notice of his interpretation of CREW, the existence of a single case of recent vintage in a single circuit does not necessarily signal that another position is unequivocally groundless.

Moreover, the facts of CREW are distinguishable from the facts here such that it would not be futile for SBA to argue that Lawrence must file an administrative appeal. For instance, in CREW, the Federal Elections Commission sent a letter to the plaintiff stating that the agency was "continuing to process [the plaintiff's] request and ha[d] produced with this letter an initial round of responsive records" and that "[u]pon the agency's final production of records, [the plaintiff] will receive a decision letter that will include information regarding your appeal rights." 711 F.3d

---

[2] Lawrence cites another case in support of his contention that the SBA letter did not represent a determination. See Mot. for Sanctions at 6 (citing Anderson v. U.S. Postal Serv., 7 F. Supp. 2d 583 (E.D. Pa. 1998)). But that case did not define the contours of what constitutes a determination. Rather, the Anderson court simply stated that a "vague positive response" to a FOIA request was insufficient. Anderson, 7 F. Supp. 2d at 586. Lawrence also cites other cases in support of his proposition that only a "determination" triggers a FOIA requestor's obligation to pursue an administrative appeal. See 8/28/20 Service Copy of Motion for Sanctions ¶ 10. But these cases all involve agencies that failed to make a timely determination. See Seavey v. Dep't of Justice, 266 F. Supp. 3d 241 (D.D.C. 2017); Martinez v. U.S. State Dep't, No. 3-14-1616, 2015 WL 222210 (M.D. Tenn. Jan. 14, 2015); Hertz Schram PC, 2015 WL 13743459, at *5. Here, Lawrence expressly does not challenge the tardiness of the determination but rather its adequacy. See Resp. to SBA Mot. to Dismiss at 7 (Dkt. 8).

at 183.  The letter also stated that "[t]oday's letter does not constitute a final agency decision, and thus is not subject to appeal."  Id.  Thus, the CREW court faced the specific issue of whether an agency could trigger the exhaustion requirement merely by expressing a "future intention" to produce documents.  Id. at 185.  The court explained that permitting such a response would "jam" a "Catch-22" into FOIA: a requester would be unable to appeal within the agency because the agency has not provided the necessary information, but the requester would simultaneously be unable to go to court because he or she had not yet appealed within the agency.  Id. at 186.  The court held that, therefore, it was "not enough" for purposes of activating FOIA requesters' obligation to exhaust "that, within the relevant time period, the agency simply decides to later decide."  Id.

By contrast, SBA's June 8, 2020 letter, which Lawrence received before bringing this action, did not postpone a decision for a later date, and it did not state that it was not subject to appeal.  See SBA Response Letter.  Accordingly, it did not place Lawrence in the same type of "Catch-22" identified by the court in CREW.  Instead, the letter expressly told Lawrence that he could appeal.  Id.

Cases in the United States District Court for the District of Columbia interpreting CREW have emphasized that the CREW court was particularly concerned with "agency feet-dragging" and situations in which an agency places FOIA requesters in a kind of "administrative limbo" by "keep[ing] FOIA requests bottled up . . . for months or years on end by issuing a response that precludes a requester from pursuing both an administrative appeal and a federal lawsuit."  Judicial Watch, Inc. v. U.S. Dep't of Justice, 410 F. Supp. 3d 216, 224 (D.D.C. 2019) (quoting CREW, 711 F.3d at 187); Bartko v. U.S. Dep't of Justice, No. 13-1135 (JEB), 2014 WL 12787640, *7 (D.D.C. Sept. 9, 2014).  Courts have distinguished  CREW in cases where plaintiffs argued that

the agency responses they received were insufficient to trigger an obligation to exhaust administrative remedies but were still able to file an immediate and substantive administrative appeal.  See Nat'l Sec. Counselors v. CIA, 931 F. Supp. 2d 77, 97 (D.D.C. 2013) ("Constructive exhaustion in the FOIA is a privilege granted only to individuals whose requests for records have essentially been ignored by the agency."); Judicial Watch, Inc., 410 F. Supp. 3d at 218; Bartko, 2014 WL 12787640, at *7.  Here, Lawrence was able to file an immediate and substantive administrative appeal upon receiving the letter from SBA.

Given these distinctions—together with the principle that individuals must generally exhaust administrative remedies before seeking judicial review of a FOIA request—it was not objectively unreasonable under the circumstances for SBA to determine that its June 8, 2020 letter was sufficient to constitute an appealable decision.  See Oglesby, 920 F.2d at 61–62 (noting that "[c]ourts have consistently confirmed that the FOIA requires exhaustion of [the] appeal process before an individual may seek relief in the courts"); cf. Reisman v. Bullard, 14 Fed. App'x 377, 379 (6th Cir. 2001) (dismissing the plaintiffs' FOIA claim in part because the plaintiffs "failed to show that they exhausted their FOIA remedies by requesting specific information in accordance with published administrative procedures and having their request improperly refused before they brought their district court action"); Powell v. IRS, No. 15-11033, 2016 WL 7473446, at *3 (E.D. Mich. Dec. 29, 2016) (determining that when the plaintiff challenged the adequacy of an agency's response to a FOIA request without first appealing to the agency, the complaint was prematurely filed).

Because SBA's position was not objectively unreasonable, sanctions are not warranted under Rule 11.

**2.  § 1927**

Lawrence contends that sanctions are appropriate under 28 U.S.C. § 1927 because SBA knew or should have known that a motion to dismiss grounded on an exhaustion requirement was frivolous.  8/28/20 Service Copy of Motion for Sanctions ¶ 15.  He also argues that the agency knew that the website contained in its June 8, 2020 letter was not responsive to his specific FOIA request.  Mot. for Sanctions at 7.

However, as noted above, SBA's exhaustion argument was not frivolous.  And the fact that Lawrence's complaint included his application of CREW to the facts of this case would not have indicated to SBA that such an argument was baseless or unwarranted by existing law.  Moreover, SBA states that if the "statistical information" on the website mentioned in its letter were printed out, such information would constitute "documents" in response to Lawrence's FOIA request.  Id. at 4 n.2.  Given that the responsiveness of the website to Lawrence's request is contested, there is insufficient evidence that SBA misrepresented that it "provided a website directing [Lawrence] to documents in response to the FOIA request" and thereby engaged in vexatious conduct.  Mot. for Sanctions at 8.

As a result, the Court finds that SBA did not file a motion to dismiss that it reasonably should have known was frivolous or that its litigation tactics unreasonably and vexatiously multiplied the proceedings.  Neither sanctions nor attorney fees and expenses that Lawrence incurred in responding to SBA's motion to dismiss are warranted under § 1927.

Having concluded that sanctions are not available under Rule 11 or § 1927, the Court turns to Lawrence's motion for attorney fees.

**B. Attorney Fees Motion**

FOIA permits courts to assess reasonable attorney fees and litigation costs against the United States where a plaintiff suing under the statute has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). Courts apply a two-part test in determining whether an award of fees is appropriate. GMRI, Inc. v. EEOC, 149 F.3d 449, 451 (6th Cir. 1998). First, a court must determine whether a litigant has substantially prevailed and is thus "eligible" for attorney fees. Id. Second, if a FOIA plaintiff is eligible for fees, a court must then determine whether the plaintiff is "entitled" to such an award based upon a balancing of equitable considerations. Id. at 451.

The Court first considers whether Lawrence is eligible to recover attorney fees and then turns to whether he is entitled to them. Concluding that Lawrence is eligible and entitled to attorney fees, the Court then discusses the reasonableness of those fees.

**1. Eligibility for Fees**

A FOIA plaintiff has "substantially prevailed" where the plaintiff "obtain[s] relief through either" (i) "a judicial order, or an enforceable written agreement or consent decree," or (ii) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). A plaintiff is deemed "eligible" to recover attorney fees by satisfying either requirement.

The parties dispute the standard that applies in determining whether a party has substantially prevailed—and is thereby eligible for an award of fees—in the absence of a court order. As SBA states in its response to Lawrence's motion, the Sixth Circuit has held that a court order is not necessary for a litigant to have substantially prevailed if the litigant "demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information." GMRI, 149

14

F.3d at 451–452.  In his motion, Lawrence argues that this caselaw was superseded by statute when Congress amended FOIA in response to the United States Supreme Court's 2001 decision in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598 (2001).  In Buckhannon, the Court held that under the Fair Housing Amendments Act and Americans with Disabilities Act fee-shifting provisions—which are comparable to FOIA— plaintiffs must have either secured a judgment on the merits of their claim or received a court-ordered consent decree to qualify as a "prevailing party."  532 U.S. at 601–602.  Congress responded to this decision in 2007 by amending FOIA to define "substantially prevailed" to include "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii); Warren v. Colvin, 744 F.3d 841, 845-846 (2d Cir. 2014) (recounting this history).  It thereby "abrogated the rule of Buckhannon in the FOIA context and revived the possibility of FOIA fee awards in the absence of a court decree."  Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 525 (D.C. Cir. 2011).

Some courts have read the 2007 amendment to incorporate a "catalyst theory" under which, to substantially prevail in the absence of a favorable judgment, a party must show that the litigation "substantially caused" the government to voluntarily or unilaterally change its position.  See, e.g., Grand Canyon Trust v. Bernhardt, 947 F.3d 94, 96 (D.C. Cir. 2020); Hertz Schram PC v. FBI, No. 12-14234, 2015 WL 5719673, at *1 n.2 (E.D. Mich. Sept. 30, 2015) (stating that in light of the amendment, "the Sixth Circuit's 'catalyst' theory appears to remain relevant").  Some courts have questioned whether a causal nexus between the litigation and the agency's subsequent release of requested records is required given the text of the statute.  See First Amendment Coal. v. U.S. Dep't of Justice, 878 F.3d 1119, 1128, 1131, 1139 (9th Cir. 2017) (dividing over whether FOIA requires a party seeking attorney fees to demonstrate causation in every instance); Off. of Fulton

Cnty. Dist. Att'y v. U.S. Dep't of Justice, No. 1:18-cv-05902, 2020 WL 10692206, at *7 (N.D. Ga. July 14, 2020) (determining that, because the plain text of the statute does not require a causal nexus between the litigation and the agency's disclosure, a defendant does not need to show that the government produced the records because of the lawsuit); Sai v. Transp. Sec. Admin., 155 F. Supp. 3d 1, 6 n.4 (D.D.C. 2016) (noting that "under the literal terms of the statute, a plaintiff need only show that the agency has changed its position and that the plaintiff's claim was 'not insubstantial'").

The Sixth Circuit has not yet addressed this issue. However, the Court need not decide whether a FOIA plaintiff seeking attorney fees must show that the lawsuit caused the agency to change its position because it finds that Lawrence has substantially prevailed even if this theory applies.

SBA did not produce any documents in response to Lawrence's request until six months after Lawrence brought this action. See Am. Mot. for Attorney Fees at 7. As discussed above, after Lawrence filed his complaint, the agency continued to argue that Lawrence must first file an administrative appeal. See Mot. to Dismiss.

SBA attributes Lawrence's receipt of the information he requested to an order that the United States District Court for the District of Columbia issued in WP Co. v. U.S. Small Bus. Admin., 502 F. Supp. 3d 1 (D.D.C. 2020).[3] Resp. to Am. Mot. for Attorney Fees at 10 (Dkt. 22). There, several news organizations brought an action pursuant to FOIA, seeking data on PPP loans and challenging the agency's claim that FOIA exemptions covered the requested information. Id. at 6–7. Finding that the information was not exempt, the court ordered the agency to release the "names, addresses, and precise loan amounts of all individuals and entities that obtained PPP . . .

---

[3] In this opinion, WP Co. refers to WP Co. v. U.S. Small Bus. Admin., 502 F. Supp. 3d 1 (D.D.C. 2020) unless other opinions in that litigation are specifically referenced.

COVID-related loans by November 19, 2020." Id. at 27–28.  SBA insists that because this order encompassed the information Lawrence requested, Lawrence cannot prove that this action was reasonably necessary to obtain the information or that the existence of this action had a causative effect upon its release.  Resp. to Am. Mot. for Attorney Fees at 10.

However, Lawrence's lawsuit need not be the sole cause of the release of documents; it can be a contributing cause.  Simply because news organizations substantially prevailed in WP Co. does not preclude Lawrence from substantially prevailing here.  See First Amendment Coal., 878 F.3d at 1126 ("In keeping with FOIA's broad reach, the statute contemplates that there may well be parallel litigation in different venues.").  Lawrence filed his suit only five weeks after the complaint in WP Co. was filed, and the information that the court ordered SBA to produce there was not precisely the same as what Lawrence requested and eventually received, given that he requested not only the amount of loans but also their purpose in general terms and maturity. Compare Lawrence FOIA Request (Dkt. 6) (requesting "information about any approved PPP loans or grants" that three specific entities and three specific individuals applied for or received, "including the amount of the loans, their purpose in general terms and the maturity"), with WP Co. 502 F. Supp. 3d at 27–28 (ordering the release of "the names, addresses, and precise loan amounts of all individuals and entities that obtained PPP and EIDL [Economic Injury Disaster Loans] COVID-related loans").  And while SBA contends that because of the WP Co. order, Lawrence would have obtained his requested information if he had "done nothing," Resp. to Am. Mot. for Attorney Fees at 10, the record indicates that is not the case.  After SBA issued a "revised" response to Lawrence's request in December 2020, Lawrence had to object to that response because it did not address all of the information he sought, thereby prompting SBA to issue a second one.  See 12/7/20 response (Dkt. 18-2); 12/14/20 response (Dkt. 18-3).

Having established that Lawrence is eligible for attorney fees, the Court discusses whether he is entitled to them.

### 2. Entitlement to Fees

Courts consider the following three factors in determining whether a FOIA plaintiff is entitled to recover attorney fees: (i) "the benefit to the public deriving from the case"; (ii) "the commercial benefit to the complainant and the nature of its interest in the records"; and (iii) "whether the agency's withholding had a reasonable basis in law." Am. Com. Barge Lines Co. v. Nat'l Labor Rel. Bd., 758 F.2d 1109, 1111 (6th Cir. 1985). "No one factor is dispositive, although the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure." Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

The first factor evaluates the public benefit and assesses "both the effect of the litigation for which fees are requested and the potential public value of the information sought." Id. To have public value, a FOIA request must have "at least a modest probability of generating useful new information about a matter of public concern." Morley v. CIA, 810 F.3d 841, 844 (D.C. Cir. 2016). For example, information has public value where it "is likely to add to the fund of information that citizens may use in making vital political choices." Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (punctuation modified). Even if, as SBA points out, Lawrence desired to know whether there was evidence of fraud by his particular employer and did not suggest that the information he obtained would be disseminated to the public, his request was tied to the issue of "[f]urther[ing] the public's urgent and immediate interest in assessing the results of an unprecedented federal relief effort financed by taxpayer dollars," including whether funds were distributed without fraud and waste. WP Co. LLC v. U.S. Small Bus. Admin., 514 F. Supp. 3d 267, 272 (D.D.C. 2021). It was also connected to the public-facing issue of transparency in regard

to the distribution of PPP loans.  Document requests that promote governmental transparency fulfill the basic purpose of FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the government accountable to the governed."  Nat'l Labor Rel. Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).  Therefore, this factor weighs in favor of Lawrence.

The second factor weighs against a plaintiff who seeks disclosure of information for a commercial benefit or personal motives and generally favors organizations that "aim to ferret out and make public worthwhile, previously unknown government information."  Davy, 550 F.3d at 1160.  SBA concedes that this action may not provide a commercial benefit to Lawrence but argues that it "appears to provide a potential personal benefit" to him by enabling him to obtain attorney fees without exhausting administrative remedies and helping him investigate his employer.  Resp. to Am. Mot. for Attorney Fees at 13.  However, Lawrence's interest in the distribution of taxpayer funds without fraud or waste and in SBA's proper response to FOIA requests also encompasses a matter of public concern.  Moreover, this action had the potential to give further insight into the way that the PPP was managed and the way its loans were distributed.  Indeed, Lawrence asserted at the outset that because of this action's ability to help illuminate the workings of SBA and a large government subsidy program, there was more at stake than his private interest in obtaining records.  Am. Compl. ¶ 37.  Thus, this factor weighs in favor of Lawrence.

The third factor requires courts to consider "whether the agency's opposition to disclosure had a reasonable basis in law," or, conversely, whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior."  Davy, 550 F.3d at 1162 (punctuation modified).  The burden remains with the agency, as the question "is not whether [a plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency

has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." Urban Air Initiative, Inc. v. Env't. Prot. Agency, 442 F. Supp. 3d 301, 319 (D.D.C. 2020).

As noted above, Lawrence asserts that SBA's withholding of information on the grounds that he failed to exhaust his administrative remedies had no reasonable basis in law.  Am. Mot. for Attorney Fees at 12.  SBA responds by arguing that, in light of the need to balance the urgency of dispensing loans to small businesses and preserving privacy, it erred on the side of caution by opting not to produce potentially confidential information about PPP loans—and that such action was reasonable.  Resp. to Am. Mot. for Attorney Fees at 13.

Regarding information generally, "[t]he government's decision to withhold information may have a reasonable basis in law even if the information was ultimately not found to be exempt." People for Ethical Treatment of Animals v. NIH, 130 F. Supp. 3d 156, 165 (D.D.C. 2015). Regarding PPP loan data specifically, while the court in WP Co. determined that "significant public interest" in the data "dramatically outweigh[ed] any limited private interest in nondisclosure" with regard to certain exemptions, it also noted that those specific exemptions "raise[d] serious legal questions and issues that d[id] not lend themselves to immediate or obvious resolution."  WP Co. v. Small Bus. Admin., No. 20-1240, 2020 WL 6887623, at *2 (D.D.C. Nov. 24, 2020).  Yet, at the same time, when SBA first responded to Lawrence's request, it did not indicate what it intended to withhold or what exemptions it intended to claim.  SBA offered its explanation about preserving privacy only after this action commenced and after it eventually provided Lawrence the information he sought.  "Failing to explain the basis for deferring [a] response . . . until after [the plaintiff] file[s] suit is exactly the kind of behavior the fee provision was enacted to combat."  Davy, 550 F.3d at 1163.  And even if this factor weighed in favor of

SBA, the reasonableness of the agency's opposition to disclosure is dispositive only when "the Government's position is correct as a matter of law." Davy, 550 F.3d at 1162 (punctuation modified). If the agency's stance is merely "founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." Id. (punctuation modified). Because the merit of the Government's position is somewhat opaque, this element does not favor either side.

In assessing the three equitable factors, the Court finds that on balance, they favor an award of attorney fees. Therefore, Lawrence is entitled to an award of reasonable attorney fees. The Court next discusses the reasonableness of the fees that Lawrence seeks.

### 3. Reasonableness of Fees

Lawrence seeks $16,167 in fees and costs, representing 45 hours of work performed by one attorney. Am. Mot. for Attorney Fees at 13, 15. SBA does not object to the requested hourly rate but rather to certain categories of billing entries. Specifically, it states that the amount includes "unreasonable items," such as the filing of an amended complaint, the filing of a motion for sanctions aimed to "punish" SBA for filing a motion to dismiss, and the potential filing of a motion to supplement the case with another FOIA request that Lawrence knew should be administratively appealed. Resp. to Am. Mot. for Attorney Fees at 15. SBA maintains that these items are unusual and excessive and that if the Court awards attorney fees, they should be removed from the calculation. Id.

Courts aim to give reasonable fee awards that are "adequately compensatory to attract competent counsel yet . . . avoid[ ] producing a windfall for lawyers." Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 349 (6th Cir. 2000). "The key requirement for an award of attorney fees is that [t]he documentation offered in support of the hours charged must be of sufficient detail and

probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." United States ex rel. Lefan v. Gen. Elec. Co., 397 F. App'x 144, 148–149 (6th Cir. 2010) (punctuation modified). In assessing billing entries, "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved." Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990), abrogated on other grounds by Buckhannon, 532 U.S. at 598. Rather, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." Id.

Lawrence filed his amended complaint in pursuit of his aim to obtain the documents he requested. While SBA states that the motion for sanctions had a punitive purpose, Lawrence's contention had a foundation in existing case law, and he was reasonably justified in challenging SBA's motion to dismiss. And SBA does not expand on why Lawrence should have known that a motion to supplement should have been administratively appealed. Moreover, none these entries appears excessive. Lawrence's attorney indicated that he spent three hours on the first amended complaint, approximately ten hours on the motion for sanctions, and about fifteen minutes inquiring about a motion to supplement. Affidavit of Counsel at 6 (Dkt. 18-5). Therefore, Lawrence may recover billing fees for these entries.

### III.    CONCLUSION

For the reasons stated above, Lawrence's motion for sanctions (Dkt. 13) is denied but his motion for attorney fees (Dkt. 18) is granted. The Court orders that SBA pay Lawrence $16,167 for his attorney fees within 60 days of this opinion's date.

SO ORDERED.

Dated: September 27, 2021          s/Mark A. Goldsmith
Detroit, Michigan                          MARK A. GOLDSMITH
                                                    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of
record and any unrepresented parties via the Court's ECF System to their
respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on September 27, 2021.

                                                    s/Jennifer McCoy
                                                    Case Manager